IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLAIR DOUGLASS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>OPTAVIA LLC,<br><br>　　　　　Defendant. | 2:22-CV-00594-CCW |

**AMENDED MEMORANDUM OPINION**

Before the Court is the Plaintiff's Motion to Certify the Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement. *See* ECF No. 7.  For the reasons that follow, the Motion will be GRANTED.

**I.      Background**

On April 21, 2022, Plaintiff Blair Douglass, who is blind,[1] filed a class-action complaint against Defendant Optavia LLC, alleging that Optavia "fail[ed] to make its digital properties accessible to blind individuals" in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189. ECF No. 1 at 1.  Specifically, Mr. Douglass alleges that he attempted to access Optavia's online store using a screen reader but was unable to because Optavia's online store is incompatible with screen-access software. *Id.* at ¶¶ 39–44.  Mr. Douglass

---

[1] The Court uses the word "blind" in the same manner as Mr. Douglass, "to include all persons who, under federal civil rights laws, have a vision-related disability that requires alternative methods to access digital information, like a Word document, email, text, or website."  ECF No. 1 at ¶ 2 n.1.

brought a single claim under the ADA, seeking injunctive, declaratory, and monetary relief including attorneys' fees. *Id.* at 30–34.

Mr. Douglass' suit came after he first contacted Optavia in June 2021 about its online store's accessibility issues. *Id.* at ¶ 46; *see Sipe v. Am. Casino & Ent. Properties, LLC*, No. 16CV124, 2016 WL 1580349, at *3 (W.D. Pa. Apr. 20, 2016) ("[P]re-litigation solutions [are] clearly[] the most expedient and cost-effective means of resolving legal matters."). Although the parties did not reach a resolution, they apparently agreed that Mr. Douglass filing suit would be the best path forward. ECF No. 7 at ¶ 4 ("As a result of the parties' shared desire to achieve the best possible solution, Plaintiff filed a class action complaint on April 21, 2022."). Shortly thereafter, on May 25, 2022, Mr. Douglass filed the instant Motion, seeking preliminary approval of a class-action settlement and conditional certification of a class for settlement purposes, which Optavia does not oppose. *See* ECF No. 7.

## II.     Standard of Review

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Furthermore, where the settlement would bind class members, "the court may approve [the settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Accordingly, "when a district court is presented with a class settlement agreement, the court must first determine that 'the requirements for class certification under Rule 23(a) and (b) are met, and must separately "determine that the settlement is fair to the class under [Rule] 23(e).""" *In re NFL Players Concussion Injury Litig.* ("*NFL II*"), 775 F.3d 570, 581 (3d Cir. 2014) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011)).

Courts in the Third Circuit generally follow a two-step process for approval of class settlements.  First, "the parties submit the proposed settlement to the court, which must make 'a preliminary fairness evaluation.'"  *In re NFL Players' Concussion Injury Litig.* ("*NFL I*"), 961 F. Supp. 2d 708, 713–14 (E.D. Pa. 2014) (quoting *Manual for Complex Litigation (Fourth)* § 21.632 (2004) ("*MCL*")).  At the preliminary approval stage,

> the bar to meet the "fair, reasonable and adequate" standard is lowered, and the court is required to determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."

*NFL I*, 961 F.Supp.2d at 714.  According to the United States Court of Appeals for the Third Circuit, there is "an initial presumption of fairness when the court finds that (1) the negotiations occurred at arm's length;  (2) there was sufficient discovery;  (3) the proponents of the settlement are experienced in similar litigation;  and (4) only a small fraction of the class objected."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).[2]

Even though there is a "strong presumption" in favor of class settlements, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595–96 (3d Cir. 2010), "preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *NFL I*, 961 F. Supp. 2d at 714 (citation omitted).  As such, "[j]udicial review must be exacting and thorough," *id.* (quoting *MCL* § 21.61), such that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties'

---

[2] At the final approval stage, a more demanding test applies, requiring the Court to examine the so-called *Girsh* factors:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In re GMC*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Zimmerman v. Zwicker & Assocs., P.C.*, No. 09-3905 (RMB/JS), 2011 U.S. Dist. LEXIS 2161, at *7 (D.N.J. Jan. 10, 2011) (citation omitted); *see also*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("In cases such as this, where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, we require district courts to be even 'more scrupulous than usual' when examining the fairness of the proposed settlement.").

If approval of the proposed class settlement is sought contemporaneously with certification of the class—that is, when the parties agree to a class-wide settlement "before the district court has issued a certification order under Rule 23(c)"—"'the certification hearing and preliminary fairness evaluation can usually be combined.'" *NFL II*, 775 F.3d at 582 (quoting *MCL* § 21.632). When doing so,

> [t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). . . . If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.* (quoting *MCL* § 21.632) (internal citation omitted). Thus, a district court may preliminarily certify a class under Rule 23(e) to facilitate notice to absent class members, fairly and efficiently resolve litigation, and preserve the resources of the court and the litigants, "allow[ing] the parties to forgo a trial on the merits, which often leaves more money for the resolution of claims." *Id.* at 583.

Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," if such notice is justified by a showing that the Court will "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify

the class for purposes of judgment on the proposal."[3]  Rule 23(e)(2) does not "displace any factor," discussed above, "but rather . . . focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2), Advisory Committee Note.

### III.  Analysis

#### A.  The Court Will Preliminarily Approve the Proposed Settlement

For preliminary approval of the proposed settlement, the Court begins with an analysis of the *GMC* factors, which here establish a presumption of fairness.  First, the agreement is the result of months of negotiation involving counsel experienced with similar settlements in similar cases; thus, it appears to be the result of arms-length negotiations.  *See* ECF No. 7 at ¶ 5.  Second, although discovery has not occurred in this case, that fact is insignificant here, where the facts are largely undisputed, and Mr. Douglass's counsel engaged in a substantial investigation into Optavia's digital platforms and their accessibility.  *See* ECF No. 1 at ¶¶ 45, 47; ECF No. 8 at 19.  Third, the parties are represented by competent counsel experienced in complex, comparable litigation.  *See* ECF No. 7-3.  Fourth, because a class has not yet been certified, the fourth *GMC* factor—the fraction of class members objecting to the settlement—cannot be evaluated at this point.  On balance, the *GMC* factors weigh in favor of preliminary approval, such that an initial presumption of fairness attaches.

---

[3] Under Rule 23(e)(2), a Court may approve a settlement proposal that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:  (A) the class representatives and class counsel have adequately represented the class;  (B) the proposal was negotiated at arm's length;  (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal;  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;  (iii) the terms of any proposed award of attorney's fees, including timing of payment;  and (iv) any agreement required to be identified under Rule 23(e)(3);  and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).

Next, the Court considers and finds that "there are no obvious deficiencies and the settlement falls within the range of reason." *Zimmerman*, 2011 U.S. Dist. LEXIS 2161 at *7. The agreement provides comprehensive injunctive relief that should ensure that within 36 months Optavia's digital platforms are accessible to blind individuals using screen-access software, in addition to a $1,000 fee to the named plaintiff and $45,000 in legal fees. *See* ECF No. 12-1. As such, the agreement mirrors the relief obtained in other cases involving similar claims in this and other districts. *See Murphy v. Eyebobs, LLC*, No. 1:21-cv-00017, ECF No. 49 (W.D. Pa. Feb. 9, 2022) ("*Eyebobs*") (Lanzillo, J.); *Murphy v. Charles Tyrwhitt, Inc.*, No. 1:20-cv-00056, ECF No. 47 (W.D. Pa. Feb. 16, 2022) ("*Charles Tyrwhitt*") (Baxter, J.); *Nat'l Fed'n of Blind of California v. Uber Techs., Inc.*, No. 14-CV-04086 NC, 2016 WL 9000699, at *1 (N.D. Cal. July 13, 2016). Notably, although the agreement contemplates a release of claims by class members for injunctive and declaratory relief, it does not preclude class members from bringing subsequent claims for money damages. *Cf. Duke v. Harvest Hospitalities, Inc.*, 20-CV-00865-CCW, ECF No. 147 at 10–11 (W.D. Pa. Aug. 11, 2022) (Wiegand, J.) (preliminarily approving FLSA class settlement that included release of damages claims but offering parties opportunity to revise the settlement to bolster notice requirements).

In short, under the proposed settlement, class members will avoid the risks associated with trial and obtain comprehensive injunctive relief in line with comparable cases, all without giving up the right to any monetary relief that they might otherwise recover. There being "no obvious deficiencies" and the settlement "fall[ing] within the range of reason," *Zimmerman*, 2011 U.S. Dist. LEXIS 2161 at *7, the Court finds for the purposes of preliminary approval that the proposed settlement appears to be "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2).

### B. The Court Will Provisionally Certify the Rule 23 Class

Turning to provisional certification of the settlement class, Mr. Douglass seeks to certify "[a] national class" under Rule 23(b)(2),

> including all Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who may access, attempt to access, or be deterred from attempting to access, the Website from the United States.

ECF No. 12-1 at 5. As set forth below, the Court finds that, for the purposes of provisional certification, the proposed class meets the criteria set forth in Rule 23(a) and Rule 23(b)(2).

To satisfy Rule 23(a), (1) the proposed class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law of fact common to the class"; (3) the representative parties' claims and defenses must be "typical of the claims or defenses of the class"; and (4) "the representative parties [must] fairly and adequately protect the interests of the class." The first requirement is met because numerosity may be inferred from the fact that Optavia's website is available throughout the United States, where there are approximately 2 million people who are blind and another 8.1 million people who have difficulty seeing. *See* ECF No. 8 at 12–13; *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (finding numerosity requirement satisfied based on evidence that there were 175,000 wheelchair users in California and that thousands of people used the defendant's 70 theatres). The commonality and typicality requirements are met because Mr. Douglass, who is blind, and each class member have the same interest in ensuring the accessibility of Optavia's digital platforms based on the same legal theory under the ADA. *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 427–28 (3d Cir. 2016) (the typicality requirement "ensures the interests of the class and the class representatives are aligned so that the latter will work to benefit the entire class through the pursuit of their own goals.") (cleaned up). Finally, the Court finds that for the purposes

7

of preliminary certification, Mr. Douglass and his counsel are free from conflicts of interest and competent and qualified to represent the class, such that they are adequate representatives. *See* ECF 7-3 (Plaintiff's counsel's resumes); *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012) ("According to the Third Circuit, Rule 23(a)(4) adequacy is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation; and (2) class representatives have no conflicts of interests.") (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d. Cir. 2007)).

Next, under Rule 23(b)(2), "[a] class action may be maintained" if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." This case fits neatly within Rule 23(b)(2), which is commonly invoked in similar ADA cases. *See, e.g.*, *Eyebobs*, No. 1:21-cv-00017, ECF No. 37 (preliminarily approving settlement between blind class members and online retailer); *Charles Tyrwhitt*, No 1:20-cv-00056, ECF Nos. 30, 32 (same); *Giannaros v. Poly-Wood*, No. 1:21-cv-10351, Doc. 28 (D. Mass. May 25, 2022). Optavia failed to maintain its digital platforms in a manner that made them compatible with screen-access software—grounds that apply generally to all members of the class. The injunctive relief sought here will remedy the deficiencies in Optavia's digital platforms, making it appropriate for the class as a whole. *See Eyebobs*, No. 1:21-cv-00017, ECF No. 37; *Charles Tyrwhitt*, No 1:20-cv-00056, ECF No. 32. Thus, the proposed class appears to satisfy Rule 23(b)(2) in addition to rule 23(a) and provisional certification in therefore appropriate.

### C. The Proposed Notice Is Reasonable

Finally, the Court considers the parties' plan for the dissemination of notice. Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who

would be bound by the proposal." Where, as here, the class is to be certified under Rule 23(b)(2), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).

The Court has reviewed (1) the proposed notice form; (2) the proposed notice plan, including its provisions ensuring that blind individuals have access to the plan using screen readers; and (c) the timeline for disseminating notice, for filing applications for attorneys' fees and costs, for filing the incentive award application, and for filing objections. *See* ECF Nos. 12-1, 7-2. Upon this review, the Court finds each of these proposals to be reasonable and appropriate under the applicable Rule 23(e) standard. Accordingly, the Court grants the parties' request and approves their proposed notices and notice plan generally.

## IV.   Conclusion

For the foregoing reasons, the Court will GRANT the instant Motion and enter an Order (1) preliminarily approving the parties' proposed settlement; (2) preliminarily certifying a class under Rule 23(a) and (b)(2) for settlement purposes only, pursuant to Rule 23(e); (3) approving the parties' proposed form of notice; and (4) setting a fairness hearing.

DATED this 14th day of September, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):
All Counsel of Record